## GREAT AMERICAN INSURANCE COMPANIES, Appellant,

v.

## Loretta WITT; Hardigg Industries, Inc. Appellees.

No. 96–CA–3423–MR.

Court of Appeals of Kentucky.

Feb. 13, 1998.

Otto Daniel Wolff, McMurty & Wolff, Covington, for Appellant.

James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, for Appellee.

Before DYCHE, HUDDLESTON and KNOPF, JJ.

### OPINION

KNOPF, Judge.

Great American Insurance Companies appeals a trial court order which reduced its subrogation recovery from the proceeds of a jury verdict. Great American is the workers' compensation insurance carrier for Yuasa Exide which is an automotive battery manufacturer. Yuasa Exide is the employer of Loretta Witt who injured herself on the job. Ms. Witt collected workers' compensation benefits from Great American in the amount of $17,211.00 for medical expenses, $10,180.00 for lost wages, and $30,000.00 for future lost wages, all totalling $57,391.00. Ms. Witt also filed a products liability claim against Hardigg Industries, Inc., the manufacturer of the equipment she was using when she was injured. Great American intervened to recover the workers' compensation benefits it paid to Ms. Witt. The defendant manufacturer filed a third party complaint against Yuasa Exide, the employer, and the defendant manufacturer alleged contributory negligence against Ms. Witt.

The case proceeded to a jury which returned a verdict finding that Ms. Witt suffered a total of $157,391.76 in damages.[1] The damages were specifically $100,000.00 for pain and suffering, $10,180.76 for lost wages, $17,211.00 for medical expenses, and $30,000.00 for diminution of her power to labor and earn. The jury also apportioned sixty percent (60%) of fault to the defendant manufacturer, twenty percent (20%) of fault to Ms. Witt, and twenty percent (20%) of fault to Yuasa Exide.

Great American contends that its subrogation interest entitles it to sixty percent (60%) of the total it paid in benefits. Thus, sixty percent (60%) of $57,391.00 equals $34,434.60, which is the amount Great American claims. Ms. Witt argues that Great American's subrogation recovery should be further reduced by the employer's degree of fault. The trial court agreed with Ms. Witt and made the following calculation: 1) first the trial court multiplied the total damage award of $157,391.76 by twenty percent (20%) (the employer's degree of fault). This calculation equals $31,478.00, which the trial court explained was the loss to Ms. Witt attributable to the apportionment of fault to the employer; 2) the trial court then subtracted this total loss of $31,478.00 from the $34,434.60, the amount Great American claims it is entitled. This calculation leaves $2,956.60 left to reimburse Great American for its subrogation interest according to the trial court's order.

The trial court determined that Great American's recovery of sixty percent (60%) of paid benefits should be further reduced by twenty percent (20%) of the entire judgment. The trial court reasoned that neither the employer nor its carrier should benefit from a loss the employer caused to the plaintiff. We believe, however, that Great American's recovery of sixty percent (60%) of paid benefits already includes a reduction for the employer's twenty percent (20%) of fault. If the employer had not been at fault, the twenty percent (20%) could have been applied to the defendant manufacturer raising its fault to eighty percent (80%). Great American

then would have been entitled to eighty percent (80%) of the paid benefits. However, because the employer was twenty percent (20%) at fault, Great American's recovery is reduced by that twenty percent (20%) just as the plaintiff's recovery is reduced by the twenty percent (20%) of fault attributed to the employer.

Reducing the subrogation interest simply by multiplying the degree of fault of the defendant manufacturer by the amount of paid benefits was the method utilized by the Court in *Dix & Associates Pipeline Contractors, Inc. v. Key*, Ky., 799 S.W.2d 24 (1990). In *Dix* the jury apportioned ninety-five percent (95%) of fault to the defendant tortfeasor and five percent (5%) of fault to the employer. The Court allowed the employer to recoup ninety-five percent (95%) of the workers' compensation benefits paid or payable by it. The Court in *Dix* explained that reducing the employer's subrogation interest by the amount of fault apportioned to the defendant tortfeasor prevents a double recovery and prevents the employer from profiting from his own negligence. *Id.* at 30.

Although the above method of determining the workers' compensation carrier's subrogation interest has been the law since *Dix*, this case presents a new and different situation than *Dix*. In *Dix* the plaintiff settled with the tortfeasor. In the settlement the tortfeasor assumed responsibility for any subrogation rights of the employer under the workers' compensation statutes and the case was tried to determine that subrogation interest. *Id.* at 25. Thus, in *Dix* the plaintiff was able to recover fully from both the tortfeasor and the workers' compensation insurance carrier. The Court in *Dix* also recognized that to allow the employer to recover more than ninety-five percent (95%) of the paid benefits would prevent the employee from being made "whole." *Dix, supra*, at 30.

The concept of the plaintiff being "made whole" has been mentioned in other Kentucky cases, such as *Fireman's Fund Ins.*

---

1. In its appellate brief, Great American miscalculated Ms. Witt's damages. Great American stated that the jury awarded Ms. Witt $58,512.00 for diminution of her power to labor and earn, which was the amount she requested. However, the verdict clearly provides that the jury actually awarded only $30,000.00 for that element of damage.

*Co. v. Government Employees Ins. Co.*, Ky., 635 S.W.2d 475 (1982), but has only recently been more developed and recognized as a primary principle of law in *Wine v. Globe American Casualty Co.*, Ky., 917 S.W.2d 558 (1996). In *Wine* an uninsured motorist caused the death of David Webb. Webb's estate collected uninsured motorist benefits from three (3) different insurance carriers. Subsequently, the three (3) insurance carriers and Webb's estate each settled with the tortfeasor for different amounts. Because the tortfeasor did not have sufficient assets to satisfy all of the settlements, the trial court determined that priority should be given to the insurance companies' subrogation claims before Webb's estate could collect on its claim. The Kentucky Supreme Court, however, gave Webb's estate priority over the insurance subrogation claims.[2] The Court held that in the absence of statutory law or contractual obligations, an insurance company's right of subrogation does not arise until the injured party is fully compensated for the injuries sustained. *Wine, supra,* at 561–62.

The trial court in this case believed that the reasoning in *Wine* should apply to this case. We agree. Like the uninsured motorist statute involved in *Wine,* the workers' compensation statute, KRS 342.700(1) merely establishes a right of subrogation to the carrier. The statute does not make any reference to priority of rights between the injured employee and the workers' compensation insurance carrier.

In this case the defendant manufacturer is the only source from which damages can be paid. Furthermore, the amount of those damages is limited by its percentage of fault. Here, the defendant manufacturer is only obligated to pay $94,435.06 (which is sixty percent (60%) of the total damages). Consequently, if Great American is allowed to recover its full subrogation interest from the defendant manufacturer before the employee Ms. Witt recovers her full portion of damages from the defendant manufacturer, then

Great American has gained priority over the claim of the injured employee.

The Court in *Hillman v. American Mut. Liability Ins. Co.*, Ky., 631 S.W.2d 848 (1982), specifically rejected the position that "the subrogation interest of the compensation carrier is entitled to priority over the common law recovery interest of the injured employee...." *Id.* at 849. However, in *Hillman* the Court allowed a pro rata recovery between the injured employee and the insurance carrier, thus putting the employee and insurance carrier on the same level for recovery. *Id.* at 850. Since the decision in *Wine, supra,* the injured plaintiff and the insurance carrier are no longer on the same level in seeking recovery for their losses. Now the injured plaintiff has priority over the insurance carrier. As *Wine* explained, granting priority to the injured plaintiff instead of the insurance carrier "places the risk of loss on the entity paid to assume such risk" rather than on the "shoulders of the party least able to bear the loss." *Id.* at 562.

Thus, we hold that under the reasoning of *Wine, supra,* Ms. Witt is entitled to first recover her share of damages from the defendant manufacturer before Great American can recover its subrogation interest.

To determine what amount will make Ms. Witt whole, we should first recognize that the workers' compensation carrier is only obligated under its insurance contract to pay limited amounts of money for limited items of damages. Therefore, the injured employee has a right under KRS 342.700 to recover damages for not only the amount of workers' compensation benefits that have been paid or are payable but also for different items of damages such as pain and suffering and for amounts of damages that exceed the paid benefits. Thus, Ms. Witt has a right to collect from the defendant manufacturer her damages for pain and suffering as well as any amounts of other damages that exceeded the amounts paid by Great American had the jury so awarded. So, to determine from this jury verdict the amount to make Ms. Witt whole, we must take the total amount of

---

**2.** One subrogation claim did have first priority as a result of a contractual obligation from the language in a release.

damages, $157,391.76, less the amount of workers' compensation benefits that have been paid or are payable, which is $57,391.76. This calculation leaves $100,000.00 as the amount needed to make Ms. Witt whole.[3] However, because she was found partially at fault the $100,000.00 must be reduced by her degree of fault, twenty percent (20%). Thus, Ms. Witt is entitled to eighty percent (80%) of the $100,000.00. In this case $80,000.00 will make Ms. Witt whole. Ms. Witt should be awarded $80,000.00 of the $94,435.00 (which is the defendant manufacturer's sixty percent (60%) of the total damages) that the defendant manufacturer must pay under the jury verdict. The remaining $14,435.00 should be applied to Great American's subrogation interest.

For these reasons, the judgment of the Madison Circuit Court is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.

All concur.

---

**3.** This remaining amount would have been larger if the jury had awarded Ms. Witt special damages above the amounts the workers' compensation carrier actually paid.