CANTRELL SUPPLY, INC., Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

No. 2001–CA–002146–MR.

Court of Appeals of Kentucky.

Dec. 27, 2002.

Leslie Rosenbaum, Lexington, KY, for appellant.

James R. Wagoner, Louisville, KY, for appellee.

Before BUCKINGHAM, HUDDLESTON, and JOHNSON, Judges.

## OPINION

BUCKINGHAM, Judge.

Cantrell Supply, Inc., appeals from a judgment of the Clark Circuit Court in favor of Daniel W. Lockridge and from the denial of its CR [1] 59 motion to alter, amend, or vacate the judgment, seeking to have Liberty Mutual Insurance Company pay a portion of the judgment based on a pretrial settlement agreement between Cantrell and Liberty Mutual. We affirm.

In the course of his employment as a delivery driver for United Parcel Service (UPS), on October 8, 1996, Lockridge injured his back while lifting a heavy package being shipped by Cantrell [2]. Due to the injury, Lockridge was unable to work for a period of time, incurred medical expenses for treatment, and experienced pain and suffering. Following Lockridge's filing of a workers' compensation claim, Liberty Mutual paid him benefits on the claim as UPS's workers' compensation insurance carrier.

In August 1997, Lockridge filed a civil complaint in the Clark Circuit Court against Cantrell for negligence in misrepresenting the weight of the package. In September 1998, the trial court granted Liberty Mutual's motion to file an intervening complaint for indemnity and subrogation pursuant to KRS [3] 342.700 related

---

**1.** Kentucky Rules of Civil Procedure.

**2.** Cantrell is a supplier of hardware such as plumbing, electrical lighting, and computer parts.

**3.** Kentucky Revised Statutes.

to its payment of $86,554.91 in workers' compensation benefits to Lockridge. On September 11, 2000, just prior to trial, Cantrell and Liberty Mutual reached a settlement of Liberty's claim and executed a written agreement.

After conducting a three-day trial between September 15–19, 2000, the jury rendered a verdict finding Lockridge and Cantrell each 50% at fault and awarding Lockridge the following damages:

| | |
|---|---|
| Past Medical Expenses | $ 63,224.48 |
| Past Lost Wages | $ 149,643.65 |
| Loss of Lifetime Earning Capacity | $ 43,565.94 |
| Future Medical Expenses | $ 43,565.93 |
| Past and Future Pain and Suffering | $ 0 |
| Total Damages | $ 300,000.00 |

Both Lockridge and Cantrell submitted proposed judgments with varying total damages awards. Lockridge requested an award of $150,000 without reduction or set-off attributed to Liberty Mutual's subrogation claim because of the settlement agreement between Liberty Mutual and Cantrell. On the other hand, Cantrell maintained Lockridge should recover a total of $84,939.58 based on exclusion of Liberty Mutual's claim due to the settlement and Lockridge's degree of fault. Under Cantrell's approach, the $150,000 attributable to Cantrell's fault should be reduced by $43,277.45 (50% of the amount Liberty Mutual had already paid Lockridge for past medical expenses and past lost wages), $21,782.97 (50% of the impairment of lifetime earning capacity), and $21,782.96 (50% of the future medical expenses).

On July 26, 2001, the trial court entered an order and judgment awarding Lockridge $106,722.55 consistent with the formula delineated in the case of *Great American Insurance Co. v. Witt,* Ky.App., 964 S.W.2d 428 (1998), since overruled by *AIK Selective Self Ins. Fund v. Bush,* Ky., 74 S.W.3d 251 (2002). The judgment first excluded the $86,554.91 Liberty Mutual had already paid Lockridge on his workers' compensation claim from the gross award of $300,000, and it then reduced the remaining $213,445.09 by 50% based on Lockridge's degree of fault.[4] The court held that the remaining $43,277.45, which otherwise would have been applied to Liberty Mutual's subrogation claim, would not be awarded to either Lockridge or Liberty Mutual because of Liberty Mutual's release of its claims under the settlement agreement with Cantrell.

Because there is no existing Kentucky case law involving allocation of a tort judgment where an intervening workers' compensation insurance carrier has settled its indemnity and subrogation claim with the third-party tortfeasor, the trial court applied the reasoning expressed in *Folstad v. Eder,* 467 N.W.2d 608 (Minn.1991), in deciding that neither Lockridge nor Liberty Mutual could recover the remaining $43,277.55. The court indicated that the settlement agreement constituted a waiver of all rights Liberty Mutual had to Lockridge's subsequent recovery as part of its subrogation claim.

On August 6, 2001, Cantrell filed a CR 59.05 motion to alter, amend, or vacate the judgment with respect to the award of future medical expenses. Cantrell maintained that the judgment for Lockridge should be reduced by $21,782.96 (50% of

---

**4.** This formula was designed to give priority to the injured employee to be "made whole" before allocating any recovery to the subrogee/insurer. In *Bush,* the Kentucky Supreme Court rejected this approach in holding that the "made whole" common law rule did not apply in situations involving subrogation under KRS 342.700(1). *Id.* at 257.

the $43,565.93 jury award for future medical expenses) because Liberty Mutual was obligated under the workers' compensation law to pay that amount to Lockridge "should Plaintiff incur medical expenses in that amount." Cantrell argued in the alternative for an order requiring Liberty Mutual to pay, either to or on behalf of Cantrell, the amount of $21,782.96 under paragraph 2 of the settlement agreement. Lockridge filed a response to the motion objecting to any reduction in the judgment based on any potential payment or obligation of Liberty Mutual to pay his future medical expenses. After a hearing, the trial court summarily denied the motion. Cantrell then filed a Notice document in the circuit court stating it was withdrawing its CR 59.05 motion with respect to reduction of the judgment and would pay the judgment in favor of Lockridge, but it did not withdraw that portion seeking alternative relief through reimbursement from Liberty Mutual of the amount awarded to Lockridge for future medical expenses.[5] This appeal followed.

 Cantrell argues that it is entitled to reimbursement of the future medical expenses recovered by Lockridge under the judgment based on its settlement agreement with Liberty Mutual. The relevant portions of the settlement agreement provide as follows:

1. There will be paid to Liberty Mutual Insurance Co. on behalf of Cantrell Supply, Inc. the sum of $24,966.47 which is in full and complete satisfaction and release of any claims which Liberty Mutual Insurance Co. raised against Cantrell Supply, Inc. or could have raised against Cantrell Supply, Inc. in the Clark Circuit Court in Clark County, Kentucky.

2. Liberty Mutual Insurance Co. shall also resolve with Daniel W. Lockridge any claims which Daniel W. Lockridge has against Cantrell Supply, Inc. for money which would be duplicative of money which Daniel W. Lockridge receives or would be entitled to receive from Liberty Mutual Insurance Co. as a result of the above-mentioned workers' compensation case involving the injury occurring on or about October 8, 1996. As to any of these claims asserted by Daniel W. Lockridge against Cantrell Supply, Inc., Cantrell Supply Inc. shall forward those claims to Liberty Mutual Insurance Co. which shall then resolve any liability of Cantrell Supply, Inc. for payment of those claims without a monetary contribution by or on behalf of Cantrell Supply, Inc.

 An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.,* offer and acceptance, full and complete terms, and consideration. *See, e.g., Hines v. Thomas Jefferson Fire Ins. Co.,* Ky., 267 S.W.2d 709 (1953); *Huff Contracting v. Sark,* Ky.App., 12 S.W.3d 704 (2000)(involving settlement of claim to future medical benefits under workers' compensation law); *Old Republic Ins. Co. v. Ashley,* Ky.App., 722 S.W.2d 55 (1986)(same). The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties. *See Withers v. Commonwealth, Department of Transportation,* Ky.App., 656 S.W.2d 747, 749 (1983); *Wilcox v. Wilcox,* Ky., 406 S.W.2d 152, 153 (1966). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in

---

**5.** By filing this Notice, Cantrell has waived any appeal of the circuit court's application of the allocation formula set forth in *Witt.*

it if possible." *City of Louisa v. Newland,* Ky., 705 S.W.2d 916, 919 (1986).

■■■ Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties. *See, e.g., Reynolds Metals Co. v. Barker,* Ky., 256 S.W.2d 17, 18 (1953); *Dennis v. Watson,* Ky., 264 S.W.2d 858, 860 (1953); *L.K. Comstock & Co., Inc. v. Becon Const. Co.,* 932 F.Supp. 948, 965 (E.D.Ky.1993). Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence. *Hoheimer v. Hoheimer,* Ky., 30 S.W.3d 176, 178 (2000); *L.K. Comstock,* 932 F.Supp. at 964. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. *Transport Ins. Co. v. Ford,* Ky.App., 886 S.W.2d 901, 905 (1994); *Luttrell v. Cooper Industries, Inc.,* 60 F.Supp.2d 629, 631 (E.D.Ky.1998). The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms. *Green v. McGrath,* 662 F.Supp. 337, 342 (E.D.Ky. 1986). Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review. *First Commonwealth Bank of Prestonsburg v. West,* Ky.App., 55 S.W.3d 829, 835 (2000); *Morganfield Nat'l Bank v. Damien Elder & Sons,* Ky., 836 S.W.2d 893, 895 (1992); *Fay E. Sams Money Purchase Pension Plan v. Jansen,* Ky.App., 3 S.W.3d 753, 757 (1999). However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder. *See Cook United, Inc. v. Waits,* Ky., 512 S.W.2d 493, 495 (1974); *Reynolds Metals Co., supra; Lagrew v. Hooks–SupeRx,* 905 F.Supp. 401, 404 (E.D.Ky.1995).

Cantrell contends that paragraph 2 of the settlement agreement clearly and unambiguously entitles it to reimbursement from Liberty Mutual of $21,782.96, which it asserts is attributable to that portion of the judgment for Lockridge's future medical expenses. A review of the settlement agreement and the statutory law does not support Cantrell's position. KRS 342.700(1) states:

> Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, *but he shall not collect from both.* If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer and the special fund of the filing of the action. *If compensation is awarded under this chapter, the employer, his insurance carrier,* the special fund, and the uninsured employer's fund, or any of them, *having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee,* less the employee's legal fees and expense. The notice of civil action shall conform in all re-

spects to the requirements of KRS 411.188(2). (Emphasis added).

Despite Cantrell's assertion, the language and intent of paragraph 2 of the settlement agreement is not clear and unambiguous. It states that Liberty Mutual shall pay or "resolve," without contribution by Cantrell, claims that Lockridge has against Cantrell for money that would be "duplicative" of money Lockridge receives or would be entitled to receive from Liberty Mutual as a result of the workers' compensation case.

■ An injured employee's tort claim typically includes both items of damage that are otherwise recoverable and items not recoverable under workers' compensation. A workers' compensation insurance carrier has no right of subrogation for amounts recovered by an employee that exceed the benefits that the employee would be entitled to receive under the workers' compensation law. *See U.S. Fidelity & Guar. Co. v. Fox*, Ky.App., 872 S.W.2d 91, 94 (1993); *Hillman v. American Mutual Liability Ins. Co.*, Ky., 631 S.W.2d 848 (1982). KRS 342.700(1) grants workers' compensation carriers a subrogation right in order to prevent an employee from receiving duplicate monies from both the carrier and the tortfeasor for the same items. *See Old Republic, supra; Mastin v. Liberal Markets*, Ky., 674 S.W.2d 7 (1984); *AIK Selective Self Ins. Fund v. May*, Ky.App., 957 S.W.2d 257 (1997).

Paragraph 1 of the settlement agreement appears to extinguish Liberty Mutual's statutory right of subrogation against Cantrell created under KRS 342.700(1). It is less clear whether paragraph 2 also creates a right of reimbursement in favor of Cantrell. Nevertheless, Cantrell's argument that paragraph 2 entitles it to receive from Liberty Mutual the entire amount awarded to Lockridge for future medical expenses included in the judgment is not persuasive.

Cantrell correctly notes that KRS 342.020 gives Lockridge a right to payment of his future medical expenses related to his work injury. However, those future medical expenses do not become "duplicative" of the future medical expenses Lockridge received under the civil judgment until they are actually incurred and determined to be payable under the workers' compensation law. As Liberty Mutual points out, KRS 342.020 limits recovery to *reasonable* medical expenses and an employer/insurer may seek review of any medical expense for reasonableness, necessity, or work-relatedness. *See* 803 KAR [6] 25:012.

■ The judgment award for future medical expenses is not necessarily coextensive with the right to payment of future medical expenses under the workers' compensation law. For example, in *AIK Selective Self Ins. Fund v. Bush, supra*, the court held that as between an insurer and injured employee, the latter is entitled to any tort award for future expenses not actually incurred. The court further stated that an insurer may receive a credit for those expenses as they are actually paid. *Id.* at 258. Any right Cantrell may have for contribution from Liberty Mutual under paragraph 2 is dependent on Liberty Mutual's obligation under the workers' compensation law. Thus, Cantrell's contention that it is entitled to immediate reimbursement for the full amount of the future medical expenses awarded under the civil judgment is without merit. While Cantrell may be entitled to reimbursement from Liberty Mutual for monies associated with Lockridge's future medical expenses that otherwise would be compensated un-

---

6. Kentucky Administrative Regulations.

der workers' compensation as they are incurred up to the amount of the judgment related to the future medical expenses award, its request for immediate reimbursement is premature.

Cantrell states in its reply brief that paragraph 2 was intended to require Liberty Mutual to pay the judgment award for future medical expenses as part of its agreement to resolve any claim which Lockridge had against Cantrell for money Lockridge would be entitled to receive from Liberty Mutual. Cantrell says the parties were aware that Lockridge was seeking a damage award for future medical expenses in the civil action and that fact was central to the negotiations of the settlement agreement. These assertions do not aid Cantrell's position because they involve extrinsic evidence irrelevant to interpretation of an unambiguous contract.[7] While we believe the language of paragraph 2 of the settlement agreement does not appear to impose responsibility on Liberty Mutual immediately to reimburse Cantrell for the future medical expenses judgment amount, this paragraph is am-

biguous at best. The parties certainly could have included much clearer language if they intended to require Liberty Mutual to pay the judgment amount for future medical expenses. Although extrinsic evidence may be considered with an ambiguous contract, the record does not reveal that Cantrell sought to offer extrinsic evidence but instead relied on its claim that the contract was unambiguous. In any event, the trial court made no factual findings, and Cantrell did not move for factual findings under CR 54.02.[8] In conclusion, we hold that the trial court did not err in denying Cantrell's motion to amend the judgment.

For the foregoing reasons, the judgment of the Clark Circuit Court is affirmed.

ALL CONCUR.

---

7. Cantrell maintained that the settlement agreement was unambiguous.

8. We note that the videotape of the hearing on Cantrell's CR 59.05 motion is not included in the record on appeal.