# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0307-WC

RESCARE, INC.  APPELLANT

V.  ON APPEAL FROM COURT OF APPEALS
NO. 2020-CA-0218
WORKERS' COMPENSATION BOARD
NO. WC-12-90001

PATRICIA MONTGOMERY (CAIN);  APPELLEES
DR. KEITH HALL, PIKEVILLE MEDICAL
CENTER; DR. KATHERINE BALLARD, THE
PAIN TREATMENT CENTER OF THE
BLUEGRASS; HONORABLE CHRIS DAVIS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

In this post-settlement medical dispute involving the workers' compensation claim of Patricia Montgomery (Cain), hereinafter Montgomery, ResCare, Inc. appeals from the determination of the Administrative Law Judge (ALJ) that a contested total right knee replacement surgery was compensable. After the ALJ reconsidered his conclusion but made no change, the Workers' Compensation Board (Board) and the Kentucky Court of Appeals each affirmed the ALJ's determination. Now, having thoroughly considered the parties' arguments and the record, we affirm.

## A. FACTUAL AND PROCEDURAL HISTORY

Montgomery was injured on three separate dates while working as a residential caregiver and job coach in a ResCare group home in Inez, Kentucky. On January 26, 2011, her right knee was injured when a resident grabbed her leg, twisted it, and did not let go for five minutes until help arrived. Later, on August 26, 2011, her back was injured while lifting another resident into bed resulting in a weeklong absence from work. Finally, on March 28, 2012, while cleaning walls and carpet at work and carrying a five-gallon bucket of cleaning solution, her left knee gave way causing her to fall onto her right side over a carpet cleaner. This third incident resulted in a head injury, accompanied by headaches, blurred vision, and double vision, as well as right knee and leg, neck and back complaints. She was transported to the hospital where she was "diagnosed with an injury to her head, head contusion, cervical sprain, and back sprain." Discharged from the emergency room with medication, she did not return to work after this fall and was ultimately awarded Social Security Disability payments.

Montgomery was treated or examined by numerous medical doctors and a vocational expert, and an MRI obtained on May 3, 2012, demonstrated complex tearing and irregular injuries involving her right knee. A vocational report prepared on May 9, 2013, referenced early indications Montgomery might need a total right knee replacement.

The parties ultimately reached a compromise settlement encompassing all three work-related incidents based on a lump sum payment of $40,000.00.

2

A Form 110, Agreement as to Compensation and Order Approving Settlement (Settlement Agreement), was approved by the ALJ on April 10, 2014.

Pursuant to the Settlement Agreement, the parties specifically apportioned $1,000.00 for the complete dismissal of the January 26, 2011, injury claim; $1,000.00 for the complete dismissal of the August 26, 2011, injury claim; and $35,000.00 for permanent partial disability arising from the March 28, 2012, injury claim, with an additional $1,000.00 for waiver of related vocational rehabilitation, $1,000.00 for waiver of the right to reopen, and $1,000.00 for waiver and dismissal of any related psychological claim.

Regarding medical expenses, however, the Settlement Agreement specifically stated, "[t]he claimant retains her right to payment of medical expenses in relation to her right knee and back." In bold and italicized print, the Settlement Agreement further acknowledged Montgomery agreed to dismiss all rights and claims pertaining to the three work-related incidents except for "her right to reasonable and necessary medical treatment for the right knee and back," while ResCare expressly agreed "it will raise no objection to payment of medical expenses related to the back or right knee, based on the allegation that the treatment actually relates to one of the 2011 injuries, rather than the 2012 injury." In a separate, boxed-in section relating specifically to waiver of medical coverage, Montgomery attested her understanding that "I am waiving all medical coverage except for my back and right knee . . . ." Importantly, the Settlement Agreement executed by both Montgomery and ResCare, and approved by the ALJ, failed to specifically limit compensability of

3

medical benefits relative to her back and right knee condition to any particular work-related incident, whether occurring in 2011 or 2012.

Several years later, based on Montgomery's medical history, worsening pain, and medical examinations conducted in July, August, and November of 2018, her treating family physician, Dr. Keith Hall, concluded she was in need of a total right knee replacement as the result of the March 28, 2012, work-related incident. Thus, Dr. Hall proceeded to request pre-certification for the recommended procedure.

At the request of ResCare, Dr. Steven Shockey subsequently conducted a records review and independent medical examination (IME) of Montgomery's right knee condition. He agreed a total right knee replacement was reasonable and necessary based on symptoms and degeneration of the knee, but opined surgery was necessitated by the natural progression of her pre-existing arthritic condition, radiographically noted in July 2011 films, rather than due to any deterioration of any work-related injury in either 2011 or 2012.

Based on Dr. Shockey's medical opinion, ResCare filed an amended Form 112, Medical Dispute, on December 13, 2018, "contesting the compensability of the proposed total knee replacement as to work-relatedness/causation." Following a telephonic benefit review conference, the ALJ entered an opinion and order on July 18, 2019, determining the medical procedure to be compensable. In doing so, the ALJ meticulously set forth factual findings supportive of his conclusion.

4

Characterizing as "unusual" the broad language contained in the Settlement Agreement, the ALJ determined by its clear terms ResCare had "waived all right to contest work relatedness/causation of future medical treatment for the right knee or low back" related to any of the work-related incidents having occurred in 2011 or 2012, and Montgomery had bargained away "all treatment for any condition other than the right knee and low back." Finding the recommended medical procedure to be both reasonable and necessary for the cure and relief of Montgomery's condition, the ALJ noted even Dr. Shockey, the physician who conducted an independent medical examination on behalf of ResCare, agreed with Montgomery's treating physicians. Finding Dr. Hall's opinion attributing Montgomery's condition and need for surgery to the continuing effects of her March 28, 2012, incident, to have been "based on [her] subjective history," the ALJ instead referenced medical "records from Dr. Anbu Nadar, Dr. Don Chaffin, and x-rays and MRIs" contained in the record in determining her condition and recommended procedure instead related back to her January 26, 2011, right knee injury. Most importantly, in determining the total right knee replacement surgery was compensable, the ALJ found:

> the Settlement Agreement clearly shows the parties [sic] belief and intent, negotiated into reality and approved the ALJ, that the right knee and low back, remain forever compensable based on causation while the other claims were forever dismissed.

> As to the rule that Settlement Agreements are not binding as to anything contained therein[,] that rule does not apply to something that was so clearly set forth and bargained for as in this case.

5

The condition of the right knee, and the need for the right total knee replacement related to the 2011 dates of injury and thus cannot be contested on causation.

ResCare petitioned the ALJ to reconsider. Based on Dr. Shockey's medical opinion, ResCare argued Montgomery's deteriorated right knee condition and need for surgery was attributable to the natural progression of non-work-related degenerative changes rather than the effects of any work-related incident occurring in 2011 or 2012. Alternatively, ResCare argued the Settlement Agreement should have been interpreted as having limited its liability for future medical treatment of Montgomery's right knee and back conditions to the ongoing effects of her March 28, 2012, work-related injury, and to the exclusion of either of the 2011 incidents. Based thereon, because the ALJ had attributed Montgomery's current right knee condition and need for surgery to her January 26, 2011, incident, ResCare argued the ALJ erred in finding the recommended medical procedure to be compensable.

On reconsideration, the ALJ rejected ResCare's arguments, holding he had reasonably interpreted the Settlement Agreement based on its clear and unambiguous terms. The ALJ further held his factual findings were both sufficient and supported by the record.

After the Board affirmed the ALJ's ruling, ResCare appealed to the Court of Appeals. Quoting the Board's analysis, the Court of Appeals cited to *Stone v. Kentucky Farm Bureau Mutual Insurance Company*, 34 S.W.3d 809 (Ky. App. 2000), holding:

> [A] settlement agreement constitutes a contract by and between the parties. The scope . . . must be determined primarily by the intent

6

of the parties as expressed within the four corners of the document. The terms . . . should be interpreted in light of the usage and understanding of the average person.

The appellate panel agreed with the ALJ's conclusion that the terms of the Settlement Agreement clearly expressed the understanding of the parties that future medical treatment for the knee would remain compensable. In doing so, the panel referenced the Settlement Agreement's declaration that "[t]he claimant retains her right to payment of medical expenses in relation to her right knee and back" and Montgomery's attestation of her understanding "that I am waiving all medical coverage except for my back and right knee[]" as clear evidence of parties' intent. The panel concluded:

> These two provisions do not reference limitations on medical care for the knee. The agreement expressly waived ResCare's ability to assert the 2011 injury as a basis to challenge causation. The ALJ interpreted the agreement as the parties expressing an intent that the knee be compensable and precluding ResCare from asserting the 2011 injury is the cause of the knee condition. The ALJ was without authority to use the grounds bargained away by ResCare to find the contested injury is not compensable.

The panel emphasized its agreement that language incorporated by the parties into their joint Settlement Agreement clearly indicated "reasonable and necessary medical expenses related to either the 2011 or the 2012 injur[ies]" would remain compensable and ResCare would be foreclosed from denying such payments by asserting treatment related to one of the two 2011 work-related incidents rather than the 2012 incident, stating, "[t]he ALJ could reasonably conclude the parties intended to make a bargain including compensability of medical expenses for the work-related knee, whether from the 2011 or the 2012 injury."

However, in so ruling, the appellate panel characterized the ALJ's holding that treatment for Montgomery's right knee and back conditions would "remain forever compensable based on causation" as "somewhat overbroad" but "at most harmless error." The panel acknowledged:

> ResCare is not precluded from asserting some other cause, such as natural aging, progression of a preexisting condition independent of the work injuries in 2011 or 2012, or subsequent events as it relates to future care.

Even so, the panel pointed out the ALJ had "made a finding as to causation," specifically determining, "[t]he condition of the right knee, and the need for the right total knee replacement [is] related to the 2011 dates of injury and thus cannot be contested on causation." The panel concluded:

> ResCare's argument that the ALJ's finding of injury occurring in 2011 is essentially an attempt to assert the 2011 injury as a defense to causation, which it bargained away. Because the surgery could not be contested on grounds that it was causally related to the 2011 injury, and because the ALJ determined the surgery is reasonable and necessary, he did not err in finding the surgery compensable.

Having determined the disputed medical treatment to be causally related, and therefore compensable, the panel also held the ALJ had correctly found the recommended procedure to be both reasonable and necessary, noting "there is no medical evidence that the proposed right total knee replacement is not reasonable and necessary" and that even ResCare's IME physician, Dr. Shockey, had indicated the same.

ResCare appealed.

8

## B. STANDARD OF REVIEW

The well-established appellate standard of review relative to workers' compensation decisions:

> is to correct the Board only where the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.

*W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). "Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018).

An appellate court reviews de novo a decision of the Board or ALJ regarding proper interpretation of the law or its application of facts. *Id.* (citation omitted). However, with regard to factual findings, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citation omitted).

> An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Jackson v. Gen. Refractories Co.*, 581 S.W.2d 10 (Ky. 1979); *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15 (Ky. 1977); *Magic Coal Co. v. Fox*, 19 S.W.3d 88 (Ky. 2000). In that regard, an ALJ is vested with broad authority to decide questions involving causation. *Drava Lime Co. v. Eakins*, 156 S.W.3d 283, 288-290 (Ky. 2005).

*Miller v. Go Hire Emp't Dev., Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015).

9

"When the decision of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971).

However, "[i]f the fact-finder finds against the person with the burden of proof, his burden on appeal is infinitely greater[]" and "[h]e must show that the evidence was such that the finding against him was unreasonable[,] because the finding cannot be labeled 'clearly erroneous' if it reasonably could have been made." *Special Fund*, 708 S.W.2d at 643. In short, "an ALJ's decision should not be overturned on appeal unless it 'is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law.'" *Eddie's Serv. Ctr. v. Thomas*, 503 S.W.3d 881, 886 (Ky. 2016) (quoting *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000)).

As specifically relates to workers' compensation medical benefits, an employer is required to pay for reasonable and necessary medical treatment resulting from the effects of a work-related injury. Kentucky Revised Statute (KRS) 342.020(1). However, an employer may move to reopen an award and contest whether medical treatment is reasonable and necessary or whether the need for the treatment is causally-related to the work injury. *FEI Installation,*

*Inc. v. Williams*, 214 S.W.3d 313, 319 (Ky. 2007).  The employer carries the burden in challenging the medical expenses and must file a timely motion to reopen the matter.  *Crawford & Co. v. Wright*, 284 S.W.3d 136, 140 (Ky. 2009) (citing *Mitee Enters. v. Yates*, 865 S.W.2d 654 (Ky. 1993)).  Hence, ResCare has the burden of proof to show Montgomery's recommended procedure was unreasonable and unnecessary or not work-related.

### C. ANALYSIS

With the foregoing standards of review and legal authority in mind, we now turn to ResCare's arguments raised in this appeal.  Before this Court, ResCare essentially argues the ALJ misinterpreted and misapplied the terms of the parties' joint Settlement Agreement.  In the alternative, ResCare argues the ALJ erred in finding Montgomery's right knee condition and recommended medical procedure were causally-related to her January 26, 2011, work-related injury rather than to the natural progression of a pre-existing arthritic condition.  For the following reasons, we reject ResCare's assertions of ALJ error and affirm.

Regarding ResCare's argument alleging the ALJ erroneously interpreted and applied the parties' Settlement Agreement, thereby depriving the employer of the benefit of its bargain, and resulting in gross injustice, we note:

> "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002).  The primary objective is to effectuate the intentions of the parties.  *Id.*  When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions.  *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178

11

(Ky. 2000). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell*, 94 S.W.3d at 385.

*3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). In short, in the absence of ambiguity, a settlement agreement must be interpreted as intending or meaning what it clearly and plainly says. Further, because a Settlement Agreement is characterized as a contract, we consider its interpretation de novo. *Miller,* 542 S.W.3d at 270.

In the present appeal, the parties individually adopted plain language in their joint Settlement Agreement evincing a bargained mutual compromise relative to Montgomery's three work-related injuries—two having occurred in 2011 and the other having occurred in 2012. Based on the parties' negotiated lump sum settlement amount, Montgomery surrendered all rights except future medical benefits relative to her right knee and back condition and ResCare accepted continued responsibility for such treatment so long as deemed reasonable and necessary and causally-related to any of the three work-related incidents.

We agree with the ALJ, Board, and Court of Appeals that the Settlement Agreement's language was unambiguous, and the parties' intentions were made manifest by clear terms contained within the four corners of the document. Had ResCare intended future medical benefits to be limited to the March 28, 2012, incident, it need not have acquiesced to the Settlement Agreement. Yet, it did. ResCare could have insisted upon insertion of plain

12

language expressly limiting its liability for future medical benefits specifically to the March 28, 2012, incident. Yet, it did not. Regardless, we are precluded from reading into the document any intent contrary to its plain terms and reasonable understanding, and we affirm the sound legal analysis of the Court of Appeals.

Here, based on ResCare's agreement to a lump sum payment of $40,000.00, the parties' Settlement Agreement clearly set forth Montgomery's dismissal, settlement, or waiver of her respective claims relative to her rights to income benefits, vocational rehabilitation services, medical treatment of any work-related psychological condition, and medical treatment of all physical conditions excepting her right knee and back conditions. No language limited ResCare's liability for future right knee or back medical treatment to any particular injury date, but simply referred generally to Montgomery's retention of her right to such benefits. ResCare's current argument seems disingenuous given its previous agreement to "raise no objection to payment of medical expenses related to the back or right knee, based on the allegation that the treatment actually relates to one of the 2011 injuries, rather than the 2012 injury."

Finally, regarding ResCare's argument that the ALJ improperly adopted an overly expansive interpretation of the parties' Settlement Agreement by broadly stating Montgomery's right to future medical benefits would "remain forever compensable based on causation," we again agree with the sound legal analysis of the Court of Appeals. Any reasonable reading of the Settlement

13

Agreement indicates ResCare was never prevented from defending against liability for Montgomery's future medical treatment based on some alternative cause, "such as natural aging, progression of a preexisting condition independent of the work injuries in 2011 or 2012, or subsequent events as it relates to future care."

Importantly, because the ALJ's factual finding that Montgomery's current right knee condition and need for surgery is due to ongoing effects of her January 26, 2011, work-related injury was based on substantial medical evidence from Dr. Nadar, Dr. Chaffin, and various x-rays and MRIs, it matters not that Dr. Shockey was of the opinion that the condition and surgery arose due to the natural progression of a pre-existing arthritic knee condition. Here, the ALJ reasonably determined the proper weight to be assigned to conflicting medical evidence and reached a reasonable conclusion regarding causation. *Fleming,* 520 S.W.3d at 386; *Miller,* 473 S.W.3d at 629. As both the Board and Court of Appeals noted, and we agree:

> Contrary to ResCare's argument, the ALJ made a finding as to causation, stating, "The condition of the right knee, and the need for the right total knee replacement related to the 2011 dates of injury and thus cannot be contested on causation."

The ALJ further found there was no medical evidence indicating the proposed right total knee replacement is not reasonable and necessary.

### D. CONCLUSION

Because ResCare has failed to meet its burden of demonstrating the ALJ's decision regarding compensability of Montgomery's current right knee

condition and need for surgical intervention was unreasonable, and therefore clearly erroneous, we discern no error and affirm.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Samantha Steelman
Mark Reynolds Bush
Reminger Co., L.P.A.


APPELLEES:

Patricia Montgomery (Cain), *pro se*

Dr. Keith Hall, *pro se*
Pikeville Medical Center

Dr. Katherine Ballard, *pro se*
The Pain Treatment Center of the Bluegrass


ADMINISTRATIVE LAW JUDGE:

Honorable Chris Davis


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey