RENDERED:  SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1002-MR

GREATER LOUISVILLE PROPERTY
MANAGEMENT LLC, TRUSTEE OF
NORFOLK LAND TRUST, DATED
MAY 1, 2011                                                            APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 17-CI-005459


RE/MAX PROPERTIES EAST, INC.                                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON,
JUDGES.

CALDWELL, JUDGE:  Greater Louisville Property Management LLC,

Trustee of Norfolk Land Trust, Dated May 1, 2011 ("GLPM") appeals from the

Jefferson Circuit Court's order granting judgment in favor of RE/MAX Properties

East, Inc. ("Re/Max") in its breach of contract claim against GLPM for a 6% real

estate commission.  Finding no ambiguity in the counteroffer made by GLPM and Re/Max having accepted the counteroffer by taking steps to complete the sale, we reverse the holding of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

GLPM entered into a contract to sell commercial real estate to nonparty Launch International, LLC ("Launch").  Re/Max represented Launch in the transaction while GLPM communicated primarily through its trustee, Dr. David A. Thomas ("Dr. Thomas").

In June 2017, Re/Max agent Rod Richardson sent GLPM a proposed sales contract.  The proposed sales contract contained in numerical paragraph ten (10) the following term:

> [GLPM] hereby agrees to pay [Re/Max]/Rod Richardson
> a commission of 6% of the final purchase price at closing.
> No other Real Estate Brokerage is involved in this
> transaction.

Upon receiving the proposed purchase contract, Dr. Thomas crossed through the printed language of the second sentence of paragraph ten where it states, "No other Real Estate Brokerage is involved in this transaction."  Dr. Thomas then added handwritten language stating, "Vista Property Management [("Vista")] has 1st right of refusal.  Will need to split commission with them."  The handwritten alteration was initialed "DT," and was dated June 29, 2017.  GLPM then executed

the revised purchase contract and returned it to Launch and Re/Max. While there were no other initials on the changes made to the contract, the parties moved towards closing the transaction.

During this period, on July 28, 2017, Re/Max presented GLPM with an "Addendum B" to the purchase contract stating that Re/Max was the only broker involved in the transaction. GLPM struck that language and returned the addendum. Similarly, in September 2017, GLPM and Vista presented Re/Max and Launch with an "Addendum #1," which stated that, in March of 2017, GLPM had contacted Mike Butler of Vista for representation involving a prospective buyer represented by Rod Richardson of Re/Max. Addendum #1 further stated that GLPM agreed to pay a 3% commission to Re/Max and a 3% commission to Vista. Launch and Re/Max declined to agree to or execute Addendum #1.

In preparation for closing, the office of the closing attorney advised the parties that they had no formal document setting forth an agreement regarding the commission payment. Therefore, Re/Max provided a letter signed by a Re/Max Broker Manager, which stated the following:

> Per [GLPM's] request and in order to close this transaction in a timely manner [Re/Max] agrees to pay [Vista] 3% of the purchase price at closing.
>
> We do not believe Vista Realtor is entitled to any commission since they did not participate in the negotiations and sale. We do believe that [Re/Max] is

> entitled to be paid 6% commission by [GLPM] which is stated in the Purchase Contract.

The closing attorney determined that, because all parties had agreed to the 3% commissions allocated on the settlement statement and all parties were going to be at the closing, the parties did not need to execute an addendum regarding the commission.

The closing occurred on September 28, 2017, with Re/Max receiving a 3% commission on the sale and Vista receiving a 3% commission on the settlement statement. On October 16, 2017, Re/Max filed a lawsuit against GLPM seeking payment of an additional 3% commission it claimed GLPM owed under the purchase contract.

The circuit court ultimately held a bench trial on August 14, 2020, and entered findings of fact, conclusions of law, and judgment on February 4, 2021. In its order, the circuit court found that Dr. Thomas's revision to the purchase contract was a counteroffer, that Launch had accepted the counteroffer by completing the closing, that the resulting contract was ambiguous, that the evidence at trial did not resolve that ambiguity, and that the circuit court would construe the counteroffer against GLPM as the drafter of the revision. Thus, the circuit court determined that Re/Max was entitled to receive an additional 3% of the purchase price for its commission. GLPM moved the circuit court to alter,

amend, or vacate the judgment, which the circuit court denied. This appeal followed. We will discuss further facts as they become applicable to this Opinion.

## STANDARD OF REVIEW

On appeal, we review the issue of contract formation *de novo*. *Baumann Paper Co., Inc. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018). Moreover, "the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted). "However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder." *Id*. (citations omitted). We review findings of fact for clear error. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010) (citation omitted).

Additionally, "[w]hen reviewing a trial court's findings under the clear error standard, the [appellate] court must determine 'whether or not those findings are supported by substantial evidence.'" *Id*. (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

# ANALYSIS

## I.        *Preservation of error*

As a preliminary matter, Re/Max contends that GLPM did not preserve its first claim of error:  that the circuit court erred when it treated GLPM's counteroffer as the contract between the parties and did not consider that neither Launch nor Re/Max signed the counteroffer.  Specifically, Re/Max contends that GLPM's motion to alter, amend, or vacate did not specifically raise this issue.  However, because the circuit court discussed throughout its various orders the issues of whether a contract was formed in this situation, whether GLPM's handwritten notations in the purchase contract were a counteroffer, and whether Launch accepted the counteroffer, we find the issue sufficiently preserved for our review.

Further, while GLPM in one part of its brief makes the foregoing argument, it also specifically states in another section of its brief that "the contract is the . . . Counteroffer from GLPM to Launch."  Thus, GLPM appears to agree that its revision of the draft purchase agreement operated as a counteroffer and that Launch's actions in continuing to close on the sale constituted an acceptance of the counteroffer.

## II.        *Acceptance of counteroffer*

In this respect, we agree with the circuit court that GLPM's handwritten

revisions to the purchase contract operated as a counteroffer to the purchase contract initially presented by Launch. Under Kentucky law, an acceptance that deviates from the terms of an offer functions as a rejection and a counteroffer. *A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.*, 998 S.W.2d 505, 511 (Ky. App. 1999). Indeed, "[a]n acceptance [of the counteroffer] must be unequivocal to create a contract" and "comply exactly with the requirements of the offer[.]" *Venters v. Stewart*, 261 S.W.2d 444, 446 (Ky. 1953).

In this case, the purchase contract did not otherwise address either GLPM's or Launch's mode of response and, in our view, does not specify that Launch could only accept the counteroffer in writing. While one section stated that the purchase contract may "only be amended by a written agreement signed by both parties," such term applied only to an amendment of the purchase contract *after* its formation. It did not require Launch to accept GLPM's counteroffer in writing. Therefore, the purchase contract GLPM returned to Launch with handwriting altering the terms operated as a counteroffer.

Further, it is undisputed that Launch arranged for the delivery and execution of the necessary documents and funds, that Launch was present at the closing, and that Launch signed all the documents required to close the transaction. Accordingly, these facts establish that Launch accepted GLPM's counteroffer by its actions in proceeding with the purchase of the property. *See Sweeney v.*

*Theobald*, 128 S.W.3d 498, 501 (Ky. App. 2004) (holding that party to real estate transaction accepted contract terms by proceeding with the sale and "act[ing] in the manner of someone who entered [into] a contract to purchase the property").

### III.    *Ambiguity*

GLPM also contends that the circuit court erred when it concluded that the contract terms were ambiguous regarding the amount of the commission owed to Re/Max.  GLPM claims that when one reads the typewritten and handwritten terms of numerical paragraph ten together, the parties intended the 6% commission to be split evenly between Re/Max and Vista, with each receiving a 3% commission.  GLPM further asserts that Re/Max failed to offer any proof that GLPM agreed to pay it a 6% commission.  Finally, GLPM maintains that Re/Max's letter agreeing to proceed with closing indicated its agreement to split the 6% commission with Vista.

This Court cannot, in good faith, adopt the circuit court's finding that numerical paragraph ten of the purchase contract is ambiguous.  As has been stated, "the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Cantrell Supply, Inc.*, 94 S.W.3d at 385 (citations omitted).  When analyzing a contract, this Court's principal goal "is to effectuate the intentions of the parties." *Id.* at 384 (citations omitted).

The fundamental principles of contract interpretation require a review of the plain language of the contract and assigning said contract language its ordinary meaning, without resorting to extrinsic evidence, unless the contract is ambiguous. And words are to be given their ordinary meaning unless the context would require otherwise. *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. App. 2009) (citations omitted). A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694-95 (Ky. 2016) (citations omitted).

> For purposes of interpretation in law:
>
> The "reasonable person" standard is an often-utilized term of art that involves an inherently objective test: a reasonable person is "a person who exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of others' interests. The reasonable person acts sensibly, does things without serious delay, and takes proper but not excessive precautions."

*Wilson v. Commonwealth*, 628 S.W.3d 132, 143 (Ky. 2021) (citing BLACK'S LAW DICTIONARY (8th ed. 2004)). The reasonable person standard does not require legal training or illogical conclusions.

When people feel they have erred or believe that someone has taken advantage of them or their situation, they often, and rightly so, turn to attorneys for

relief. It is often an attorney's job to find "ambiguities" so their client may get some relief. The court, also being made up of attorneys, can also often identify where the "ambiguity" being claimed exists. But the question remains: would a reasonable person, not necessarily someone trained in the law, see an ambiguity?

Numerical paragraph ten of the purchase contract reads:

10. BROKERAGE: Seller hereby agrees to pay RE/MAX Properties East/Rod Richardson a commission of 6% of the final purchase price at closing, ~~No other Real Estate Brokerage is involved in this transaction.~~ VISTA Property Management has the 1st right of refusal. Will need to split commission with them. D.T. 6/29/17.

The circuit court determined that this paragraph could be read one of two ways: 1) a full commission of 6% payment to Re/Max is required with an added commission payment to Vista, or 2) requiring the 6% commission to be divided between Re/Max and Vista. However, the language in paragraph ten talks about only one commission, 6% of the final purchase price, and that commission being split between two brokers: Re/Max Properties East/Rod Richardson and Vista Property Management. Reasonable people, including the parties in this case, would interpret that only one way – that the seller is paying a 6% commission to be divided between the two listed agents. To require the paragraph to be interpreted as if to include the seller paying, in addition to the 6% to Re/Max, some other additional, undisclosed amount of money to the other broker is illogical and unreasonable.

Further, while the court need not look outside of the four corners of the accepted contract to interpret its meaning, when doing so in this instance, the actions of the parties only support a conclusion that both parties understood the reasonable meaning of paragraph ten is as claimed by GLPM. If Re/Max truly believed the contract supported it being paid the full 6% of the purchase price, why then seek an addendum to be named the only agent involved in the transaction? Why write the letter at closing saying it did not believe that Vista is entitled to any commission since they did not participate in the negotiations and sale? Why would Re/Max agree to pay 3% of the purchase price to Vista at the closing, after only receiving 6% of the purchase price as the commission, if Re/Max actually believed the terms of paragraph ten entitled them to a full 6% of the purchase price? The answer, of course, is buyer's remorse. Or in this case, buyer's agent's remorse.

When GLPM made the counteroffer stating that the 6% commission would have to be split with Vista, Re/Max accepted those terms when it proceeded with steps to finalize the sale. And so, Re/Max, having accepted the terms, then becomes dissatisfied with the terms. Having become dissatisfied with the terms, Re/Max now claims the terms are ambiguous and that a reasonable person would believe that under the terms of the purchase contract, Re/Max is entitled to a full 6% of the purchase price for its commission. One must set aside logic to see where a reasonable person would find so.

Therefore, where the terms of the counteroffer are not ambiguous, and where Re/Max accepted the terms by proceeding to take steps to finalize the purchase, Re/Max has been paid in full the 6% of the purchase price, which it split with Vista at the closing. Re/Max is not entitled to any further remuneration.

## CONCLUSION

For the foregoing reasons, we reverse the Jefferson Circuit Court and remand for dismissal of the action.

THOMPSON, K., JUDGE, CONCURS.

CLAYTON, CHIEF JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CLAYTON, CHIEF JUDGE, DISSENTING: I respectfully dissent from the majority Opinion and would affirm the circuit court. I agree with the circuit court that Dr. Thomas's handwritten changes to the contract's commission payment terms were unclear because they both provided GLPM would pay Re/Max a 6% commission and the commission would be "split" with Vista. In this case, one could reasonably construe the contract as requiring either a full 6% commission payment to Re/Max with an added commission payment to Vista or as requiring the 6% commission to be "split" in some other way between Re/Max and Vista.

It is axiomatic that "[a]ny contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). Indeed, the plain meaning of "split" is "to break apart." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/split (last visited Sep. 6, 2022). Thus, a "split" can be something other than 50/50.

Accordingly, "once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues . . . subject to resolution by the fact-finder." *Cantrell Supply, Inc.*, 94 S.W.3d at 385. Here, the circuit court's findings of fact regarding the extrinsic evidence were not clearly erroneous and the evidence presented by the parties, taken as a whole, did not resolve the ambiguity. Indeed, the trial evidence indicated it could be reasonable to find that Re/Max would receive a 6% commission and Vista would receive an additional commission above that amount, as even after GLPM's handwritten revisions, the contract continued to state that GLPM would pay Re/Max a 6% commission and Re/Max presented testimony that commercial real estate transactions may involve commissions of 10-12%. Moreover, testimony also established that Vista was not actively involved in the transaction. Furthermore, Re/Max openly asserted its belief that it was entitled to receive a 6% commission in its pre-closing letter, and that Vista was not "entitled to any commission since they

-13-

did not participate in the negotiations and sale." Thus, one could reasonably construe the contract to require that Re/Max receive a 6% commission.

It is well-established that contractual contradictions and ambiguities are typically construed against the drafter. *Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 441 (Ky. 2017) (citation omitted). The onus was squarely on GLPM to draft, in plain language, that it would pay a 3% commission to Re/Max and a 3% commission to Vista. Because GLPM drafted the handwritten provision, I would affirm the circuit court's determination that the provision must be construed against GLPM. Thus, I would affirm the circuit court's decision.

BRIEF FOR APPELLANT:

Andrew S. Zeh
Louisville, Kentucky

BRIEF FOR APPELLEE:

William A. Merrifield
Louisville, Kentucky