RENDERED: MARCH 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1154-MR

CURTIS LEE                                                                              APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 18-CI-003290


PHOENIX AMERICAN ADMINISTRATORS,
LLC; AND PHOENIX AMERICAN
WARRANTY COMPANY, INC.                                                APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Curtis Lee appeals from the Jefferson Circuit Court's

order granting summary judgment in favor of Phoenix American Administrators,

LLC and Phoenix American Warranty Company, Inc. (collectively referred to as

Phoenix American) and dismissing the case.  This case involves certain provisions

found in a guaranteed asset protection (GAP) waiver addendum entered by Lee in the course of purchasing and financing a motor vehicle. In rendering its judgment, the trial court determined that Lee had not submitted his claim to Phoenix American in a timely and complete fashion pursuant to the terms of the written agreement. Having reviewed the record and the arguments of the parties, we reverse and remand.

In 2014, Lee purchased a used Kia Optima from Kia Store East in Jefferson County. Lee financed this purchase for a 72-month term with Regional Acceptance Corporation (Regional) as lender and lienholder on the automobile. At the time of his purchase of his car, Lee also purchased a GAP waiver addendum (the GAP Waiver) for an additional $750 which, in the event of a total loss, provided for the forgiveness by Regional of any amounts Lee might still owe on the vehicle after any payment made to Regional for the loss by a third party automobile insurance carrier. The GAP Waiver describes the entities "Phoenix American GAP" and "Phoenix GAP" variously as Administrator, program administrator, and Plan Administrator. Phoenix GAP and Phoenix American GAP are listed at two different Miami, Florida addresses within the GAP Waiver; however both entities are listed with the same phone number. The GAP Waiver defines the amount of the waiver provided as "the difference between the actual cash value of the vehicle and the outstanding balance[.]" In sum, such protection

would ostensibly protect Lee if he were "upside down" on the vehicle (still owing Regional more than the car was worth) when the car might be totaled.

On September 24, 2017, Lee was involved in a collision and his Kia was declared a total loss. Lee was not at fault in this collision. The at-fault driver's insurance company paid out the fair market value of Lee's vehicle to Regional on November 9, 2017. This payment represented the date of the "total loss payment" referenced in the GAP Waiver. Such payment did not cover the balance that Lee still owed Regional on the vehicle thereby triggering Lee's rights pursuant to the GAP Waiver. The November 9 date also triggered the running of a 120-day window within which Lee was responsible for submitting his claim to Phoenix American pursuant to the terms of the GAP Waiver. 120 days after the total loss payment was therefore March 9, 2018. These facts are not disputed.

Lee, by affidavit, testified that "[a]fter the wreck occurred, I contacted [Phoenix American] by phone" and "[t]hey told me they were going to mail me forms which I never received." Despite calling Phoenix American, Lee asserted that he did not receive the claim form in a timely manner and "[t]he first time I received any forms whatsoever from [Phoenix American], I believe was on March 21 or 22, 2018." Lee's assertions are material to the contractual issues presented, and therefore would be questions of fact for a jury. In the subsequent order granting summary judgment, the trial court stated that "[a]lthough Plaintiff's

Response asserts that the affidavit of Lee is attached as an exhibit, there is no affidavit attached, nor is there an affidavit of Lee in the record." Such finding appears to have been incorrect. The record on appeal as certified by the Jefferson County Circuit Clerk contains not only the affidavit itself, but also individually references the affidavit as "Exhibit (2)" to Lee's memorandum at pages 113 to 114 within the index for volume one of the record on appeal.

Phoenix American, by counsel, denied receiving a call from Lee to initiate the claim and asserted that it was not made aware of the collision until February 15, 2018, when it received notification of the loss, not from Lee, but from Regional, the lender and lienholder, which reported the claim. According to Phoenix American, on February 16 it mailed Lee a letter advising him of the documents he needed to tender and a blank claim form. Hearing no response from Lee, Phoenix American asserted that it re-sent the letter and claim form to him again on March 16, 2018. Like Lee's assertions, Phoenix American's allegations would present questions of fact for a jury. According to Phoenix American, Lee finally contacted them by phone on March 19, 2018 and informed them of his current address. Phoenix American again sent out their letter and claim form and received documents back from Lee on March 29, 2018 (more than 120 days after the triggering event of the total loss payment) and, even then, not all the required documents were tendered. On the date that it received the materials, Phoenix

American determined to deny Lee's claim as untimely. Phoenix American provided business records including what appears to be a claim-activity log to substantiate its factual allegations, however, these business records were not certified as required by Kentucky Rules of Evidence (KRE) 902(11). Also, and unlike Lee, Phoenix American's representations of fact were neither supported by affidavit, nor were they in the form of attested discovery responses or sworn deposition testimony.

Lee instituted an action to enforce the agreement and Phoenix American ultimately moved for summary judgment asserting that Lee breached the terms of the GAP Waiver by failing to submit his claim to Phoenix American in accord with its claim procedure section of the agreement.

The trial court considered the requirement for claims to be "submitted within 120 days from the date of total loss" to be the primary contractual issue before it. As stated on the second page of the agreement under the heading of "CLAIM PROCEDURE," it was Lee's responsibility to:

> In the event of a total loss, you shall promptly provide the following documentation to the Program Administrator at the address shown below. All copies must be complete and legible. Any claim must be submitted within one hundred twenty (120) days from the date of total loss of the vehicle or total loss payment you received from your primary insurer, whichever is longer. Any claim submitted after the one hundred (120) days period is void.

Thereafter, the agreement identified the six categories of the documentation Lee was to "promptly provide." The first of those listed documents is a "[c]ompleted GAP Claim form." As an initial matter we must be note that a GAP Claim form is not contained within or attached to the GAP Waiver agreement. Therefore, Lee would have been dependent upon Phoenix American to first provide such a form to him before he could return a completed form.

The remaining five categories of documents to be "promptly provid[ed]" were:

> (2) A copy of the applicable primary insurance policy and declaration sheet clearly indicating coverages and deductibles[,] (3) A copy of the primary insurance company claim settlement check(s) and/or settlement statement[,] (4) A copy of the police report made for the incident if applicable. Such report shall include the date of loss, the vehicle mileage as of the date of loss, and the circumstances involved in the total loss[,] (5) A copy of the original Financial Agreement, proof of the proceeds recovered from cancellation of refundable items, and a copy of the GAP Waiver addendum[, and] (6) Documentation detailing the outstanding balance as of the date of loss and a statement regarding any past due amount(s) or other charge(s), if any. You shall also provide any other reasonable documentation requested by us necessary to complete your claim.

In granting Phoenix American's motion for summary judgment and finding Lee's claim to be time-barred by the terms of the GAP Waiver, the trial court found that:

The record reflects that Lee submitted the GAP form and supporting documents to [Phoenix American] on March 29, 2018, he submitted (1) a completed claim form, (2) a primary insurance claim settlement check, and (3) a primary insurance claim settlement statement; *but did not submit* (1) his primary insurance policy, including declarations; (2) his insurer's evaluation report; (3) the police report; (4) the financing agreement; (5) a vehicle service contractor cancellation refund check; (6) a copy of the GAP Waiver Addendum; (7) documentation of the outstanding balance on the financing agreement; or (8) documentation of his payment history.

(Emphasis added.)

Lee appealed and asserts that it was error for the trial court to determine that Lee had violated the terms of the GAP Waiver relative to his submission of a claim. Furthermore, Lee argues that genuine issues of material fact precluded summary judgment and that both Kentucky law and public policy precluded summary disposition.

On appeal, this matter presents both questions of law and fact. As a factual matter, when did Lee "submit" his claim? The trial court could not, and did not, make factual determinations as to whether Lee called Phoenix American first, when Phoenix American mailed claims forms to Lee, or why those claims forms were initially going to an incorrect/old address. Thus, the actual cause of the delay(s) in adjusting Lee's claim was not resolved. As an issue of contract law, the issue is was Lee's submission of his claim either late or incomplete in violation of the clear and unambiguous terms of the GAP Waiver?

As to factual issues presented, the standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App. 2001). In making its determination, the trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480-82 (Ky. 1991). Because summary judgment involves only legal questions and the existence, if any, of disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996); *Palmer v. International Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 882 S.W.2d 117, 120 (Ky. 1994); Kentucky Rules of Civil Procedure (CR) 56.03.

When Lee finally submitted documentation to Phoenix American and what documentation he submitted is not in dispute. However, the date when Lee first contacted Phoenix American is at issue. According to his affidavit, Lee contacted Phoenix American "within weeks" of the accident and was told that he would receive documents from Phoenix American in the mail. For purposes of

summary judgment and this appeal, we must view the record in the light most favorable to Lee and will presume that he did in fact contact Phoenix American by phone to alert them to his claim in a timely manner. The issue then becomes whether such contact was a sufficient "submission" of Lee's claim pursuant to the GAP Waiver's contractual terms. If Lee's phone call to Phoenix American to initiate his claim was insufficient, then the timing of such call would be immaterial. The trial court determined that the agreement required Lee to not only make contact with Phoenix American to report the claim, but to provide his completed claim form and all of the other documents listed on the GAP Waiver agreement to Phoenix American all within 120 days as well.

The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky.App. 2000); *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). In reviewing this contract, it is important to recognize that there is a distinction between submitting a claim and providing supporting documentation. The agreement states that the claimant shall "promptly provide" the listed documentation, but it does not state that each and every described document must also be "provided" before the claim will be considered "submitted." The relevant paragraph in the GAP Waiver states that "[i]n the event

of a total loss, you shall promptly provide the following documentation to the Program Administrator at the address shown below" and that "[a]ll copies must be complete and legible." The term "promptly" is not defined by the agreement. More importantly, as we have already discussed, a claimant would have to first notify Phoenix American of a total loss, and await receiving the "GAP Claim Form" from Phoenix American, before he or she would be able to then return a "Completed GAP Claim Form" which is the very first document listed that a claimant must provide.

If, after notifying Phoenix American of a total loss accident, a claimant does not receive a GAP Claim Form from Phoenix American in a timely manner, he or she could be precluded from "promptly provid[ing]" all of the documents described in the agreement. This would also be true if the form is not forwarded to the claimant's current address as occurred here.

After the clauses concerning providing documentation, the paragraph next states that "[a]ny claim must be submitted within one hundred twenty (120) days from the date of total loss of the vehicle or total loss payment you received from your primary insurer, whichever is longer" and then, "[a]ny claim submitted after the one hundred (120) days period is void." The GAP Waiver does not define a "claim" or what constitutes a claim being "submitted."

Phoenix American argues that the paragraph requires that a claimant (a) notify Phoenix American of the claim, (b) await a GAP Claim Form, (c) complete the form, and (d) return it and all other listed documents (whether or not the claimant possesses each of them), all within 120 days. While it is arguable that the paragraph read as a whole may imply such, it is not what the agreement actually says.

Kentucky law is quite clear about the interpretation of contracts. If the contract is unambiguous, we must stay within the four corners of the document to determine its meaning. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County*, 174 S.W.3d 440, 448 (Ky. 2005). Such is "doubly true" when interpreting its legal meaning. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Comp.*, 94 S.W.3d 381, 384 (Ky.App. 2002).

However, if we interpret the GAP Waiver as Phoenix American asserts, the ambiguity becomes clear. Phoenix American's reading does not distinguish between "claims" which are to be "submitted within 120 days" and the listed supporting "documents" which are thereafter to be "promptly provid[ed]." When the language of an agreement is ambiguous, the court's primary objective is to effectuate the intentions of the parties. *Id*. We must also be guided in our interpretation of this agreement by "the contract interpretation canon historically known by the useful Latinism, *contra proferentem*: When interpreting contracts

susceptible to two meanings, we construe ambiguity against the drafter[.]" *Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 441 (Ky. 2017).

If Phoenix American wanted to have not only notification of a claim, but all listed documents (including its own form) returned to it within 120 days of a loss, it could have simply reworded its position stating, "Phoenix American must receive both notification of your claim and all the documents listed below within one hundred twenty (120) days or this agreement is void and your claim will be rejected."

This Court finds that if Lee reported his claim to Phoenix American within 120 days of his total loss, he met his initial obligations under the agreement. Consequently, whether or not Lee did in fact contact Phoenix American to report his claim "within weeks" of the collision is a genuine issue of material fact which could not be determined by the trial court, and thus, summary judgment in Phoenix American's favor was erroneous.

Having addressed the issue of how a claim is submitted pursuant to the GAP agreement, we must now discuss the documentation which a claimant must thereafter provide. In reviewing this issue, the Court notes that the record does not reflect Phoenix American or Regional questioning whether or not Lee was in an accident, that a total loss occurred, that Lee's insurance had already paid an

-12-

appropriate amount to Regional for the loss, whether Lee was current on his payments, or was otherwise in breach of his financing agreement with Regional. In sum, the record reflects that Lee incurred a valid claim pursuant to the GAP Waiver. Once Lee's insurance provider paid the value of the totaled vehicle to Regional, Regional should have forgiven any remaining balance Lee owed under the financing agreement. Lee had paid the not-insubstantial sum of $700.00 in consideration of this promise. Instead of forgiving the balance on the financing agreement, Phoenix American (as agent for Regional) denied Lee's claim citing the necessity of additional documents which appear wholly unnecessary in this particular instance to a prompt review of the claim. A review of each of the documents that had not been tendered within the 120-day period reinforces this fact.

Regional had already received and accepted payment for the fair market value of Lee's vehicle directly from Lee's insurance and Regional itself reported the event to Phoenix American. There is no evidence that Regional believed that such payment was improper or insufficient; therefore the production of Lee's "primary insurance policy, including declarations" appears irrelevant. The same is true for the "insurer's evaluation report" and "the police report" assuming either one exists or were ever in Lee's possession. The "primary insurance claim settlement check" had already been sent to, received by, and

-13-

negotiated by Regional. The "financing agreement" had been in Regional's possession since the car was purchased by Lee. It cannot be assumed that a "vehicle service contractor cancellation refund check" even existed. The "GAP Waiver Addendum" should be in the possession of either Regional and/or Phoenix American as they are the ones who sold it to Lee. Finally, Regional itself would know "the outstanding balance on the financing agreement" and Lee's "payment history." Most importantly, Phoenix American has shown no prejudice to it or Regional from any delay in receiving, or not receiving, the listed documents from Lee.

The GAP Waiver is clearly a contract of adhesion insofar as it is offered to consumers on essentially a "take it or leave it" basis without affording the consumer any real opportunity to bargain. Adhesion contracts are not *per se* improper; however, oppressive terms ancillary to the main bargain may be concealed in fine print and couched in vague or obscure language within such contracts. In consumer transactions, our Courts are willing to scrutinize such contracts and have refused to enforce egregiously abusive ones. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 n.20 (Ky.App. 2001). Based on the circumstances before us we find that Phoenix American's denial of Lee's claim, premised upon strict production of unnecessary documentation, makes those clauses of the GAP Waiver unconscionable.

Lastly, Phoenix American argues in its response brief that the trial court erred by not also granting summary judgment based upon a lack of privity of contract between Phoenix American and Lee. The trial court made specific rulings on that issue within its memorandum and order and rejected the argument, finding that Lee could pursue his claim as a third-party beneficiary of the contract between Phoenix American and Regional Acceptance Corporation. Phoenix American did not file a cross-appeal on the issue of privity and this argument is not properly before us. *Brown v. Barkley*, 628 S.W.2d 616, 618-19 (Ky. 1982). To the extent that Phoenix is suggesting that we affirm upon this alternative ground for granting summary judgment, we decline to do so.

Accordingly, we reverse and remand the Jefferson Circuit Court's order granting summary judgment and dismissing the case.

ACREE, JUDGE, CONCURS IN RESULT ONLY.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Timothy McCarthy
Louisville, Kentucky

BRIEF FOR APPELLEE:

Erin Celeste Sammons Izzo
Gregory Alan Jackson
Leslie P. Vose
Lexington, Kentucky